## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

COREY P.,[1]                          )
                                      )
      Plaintiff,                 )
                                      )
vs.                                   )    **Case No. 3:21-cv-530-DWD**
                                      )
COMMISSIONER OF SOCIAL                )
SECURITY,                             )
                                      )
      Defendant.                 )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423. For the following reasons, the final agency decision is due to be reversed.

### Background and Procedural History

Plaintiff was born on March 5, 1976. (Doc. 12, p. 27).[2] He graduated from high school and completed two years of college but did not receive a degree. (Doc. 12, p. 932). Plaintiff is a veteran who served in logistics in the United States Army (Doc. 12, pp. 932, 956 ). He retired in May of 2017, after serving his country for 21 years, five months, and 1 day. (Doc. 12, pp. 45-46, 146, 932). During his time in the army, he was deployed to

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Plaintiff is currently unmarried but was married on two prior occasions. His first wife died in 1999 of leukemia. He has two adult daughters from his first marriage. His second marriage ended in divorce in 2018. (Doc. 12, p. 965).

Guantanamo Bay where he experienced traumatic events, including being threatened by a prisoner and witnessing a prisoner commit suicide by hanging. (Doc. 12, pp. 933, 964). After retiring from military service, he admitted to suffering from flashbacks, nightmares, hypervigilance, insomnia, and guilt. (Doc. 12, pp. 964, 974). He has been diagnosed with Major Depressive Disorder, Post Traumatic Stress Disorder, and migraines. (Doc. 12, p. 964).

Following his retirement from the army, Plaintiff worked as a customer service representative for the Veterans Administration Hospital. (Doc. 12, p. 934). Plaintiff worked in this position until November 2018 when he underwent back surgery for degenerative disc disease (L5-S1 fusion with posterior lumbar interbody fusion from the left) (Doc. 12, pp. 933, 956, 990; Doc. 12-1, p. 76). After his back surgery, Plaintiff remained employed with the Veterans Administration Hospital, but was unable to work due to left leg pain and low back pain. (Doc. 12, pp. 47, 934, 956).

As to his ongoing symptoms, Plaintiff was advised that "the best they can offer at this point is a spinal cord stimulator," which Plaintiff received in 2019. (Doc. 12, pp. 24, 48, 990; Doc. 12-1, pp. 112-136). In October 2019, 1.5 months after receiving a spinal cord stimulator, Dr. James Lu, Plaintiff's neurosurgeon, concluded as follows:

> At this point, he is at maximal medical improvement from the neurosurgical perspective, and I have no expectation that he will be able to return to his prior employment secondary to his ongoing pain and physical limitations. I have no further surgical recommendations for him at this time and will be releasing him from my care.

(Doc. 12-1, p. 135).

On April 12, 2019, Plaintiff received a summary of benefits from the Department

of Veterans Affairs ("VA'). (Doc. 12, p. 146). The summary of benefits indicates that the VA assessed Plaintiff as being 100% disabled. (Doc. 12, p. 146). That same day, Plaintiff applied for DIB, alleging a disability onset date of November 8, 2018. Plaintiff alleged disability due to a combination of impairments including status post L5-S1 fusion, left shoulder arthritis, gout, migraines, hypertension, major depressive disorder, anxiety, ankle surgeries, and lower extremity pain (Doc. 12, p. 178). The claim was denied initially on September 6, 2019, and again on reconsideration on February 5, 2020. On December 10, 2020, at the request of Plaintiff, a hearing was held, and on January 22, 2021, an Administrative Law Judge ("ALJ") denied Plaintiff's application. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The Administrative Law Judge ignored significant portions of records from the Veterans Administration.

2. The Administrative Law Judge did not properly address [Plaintiff's] testimony about the consultative examination from Dr. Adrian Feinerman.

3. The Administrative Law Judge incorrectly stated that [Plaintiff] said he could walk a block with a cane.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an

3

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have an impairment or combination of impairments that are severe? (3) Does the claimant's impairment or combination of impairments constitute an impairment that the Commissioner considers conclusively disabling? (4) If the claimant does not have a conclusively disabling impairment, can the claimant perform his past relevant work? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any

errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the Court takes the entire administrative record into consideration but does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ[3]

The ALJ followed the five-step analytical framework described above. At step one, he determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of November 8, 2018. (Doc. 12, p. 19). He was 42 years old on the alleged onset date. (Doc. 12, p. 27). At step two, the ALJ found that Plaintiff has the following severe impairments:

> [D]egenerative changes to the cervical, thoracic and lumbar spine, status post lumbar fusion and spinal cord stimulator placement, major depressive disorder, post-traumatic stress disorder, and left shoulder arthritis.

(Doc. 12, p. 19). Additionally, the ALJ found that Plaintiff has the following nonsevere impairments:

---

[3] The ALJ also assessed whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Social Security Act. The ALJ concluded that Plaintiff's earnings record showed that he has acquired sufficient quarters of coverage to remain insured through December 31, 2023.

[G]out, history of bilateral knee and ankle surgery, migraine headaches, and obstructive sleep apnea.

(Doc. 12, p. 19).

At step three, the ALJ found that Plaintiff does not have any impairments or combination of impairments that are considered conclusively disabling. (Doc. 12, p. 20). Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently push and pull with the left upper extremity and occasionally reach overhead with the left upper extremity, climb ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to loud noise, but moderate noise (level 3) is acceptable. He must avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights. He can perform only jobs that can be learned in 30 days or less, can make only simple work related decisions, can tolerate only occasional contact with the general public, and can tolerate only occasional changes in work processes and procedures. He must use a cane held in the right (non-dominant) hand for any ambulation that is necessary with the free hand available for any lifting and carrying that may be necessary.

(Doc. 12, p. 22).

At step four, the ALJ found that Plaintiff did not have any past relevant work. (Doc. 12, p. 27). At step five, the ALJ, relying on the testimony of a vocational expert ("VE"), found that Plaintiff was not disabled because he had the RFC to perform other jobs that exist in significant numbers in the national economy. (Doc. 12, p. 27).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum & Order. The following summary of the record is directed to the

points raised by Plaintiff.

### 1. Evidentiary Hearing

Plaintiff was represented by an attorney at the telephone hearing on December 10, 2020. During the hearing, Plaintiff and the VE, Stephen Schill, testified.

During his testimony, Plaintiff indicated that, despite the prior surgical treatments to his spine, he continues to experience pain, including radiating nerve pain down his legs. (Doc. 12, pp. 48-49). According to Plaintiff, the pain is so severe he is unable to work. (Doc. 12, p. 48). Plaintiff uses a cane to walk. (Doc. 12, p. 52). He also testified that he is unable to stay awake, takes cat naps, has migraines, and has had multiple surgeries on his knees, ankles, and arm. He also indicated that he is having problems with his shoulder, neck, and lower back. (Doc. 12, p. 48).

Because of Plaintiff's symptoms (severe pain and the risk of falling asleep), he rarely drives, and relies on his girlfriend to take him to and from appointments. (Doc. 12, pp. 44-45, 61). When Plaintiff does drive, it is only for short distances. (Doc. 12, p. 61). He is unable, for example, to drive himself to VA appointments in St. Louis, and, as a result, his girlfriend takes him to and from those appointments. (Doc. 12, p. 61). Plaintiff's girlfriend also does most of the cooking, cleaning, and grocery shopping. (Doc. 12, p. 58).

Plaintiff testified that he is in pain every day, and he has maybe ten "good days" per month. (Doc. 12, pp. 54-55). On a good day, he can walk or stand for 10 or 15 minutes, and he can sit for 45 minutes, at most, before he must rotate to address his pain. (Doc. 12, pp. 54-55). On a bad day, he does not even try to get up. (Doc. 12, p. 54). On a bad day, he can sit for 10 minutes at most. (Doc. 12, p. 55). He must lay down about 20 times a day.

(Doc. 12, p. 62). He further testified that he can pick up a gallon of milk, and maybe a ten-pound bag of potatoes. (Doc. 12, pp. 56-57), but he cannot pick up anything with his left hand. (Doc. 12, p. 57).

Plaintiff also provided testimony regarding his examination with Dr. Adrian Feinerman, the consultative examiner hired by the Commissioner to examine Plaintiff. (Doc. 12, pp. 58-60). According to Plaintiff, Dr. Feinerman failed to perform material portions of the testing described in his report. Specifically, Plaintiff testified that, contrary to the report provided by Dr. Feinerman, Dr. Feinerman did not have him raise his legs while laying down or sitting on the examination table, did not examine the range of motion of his neck, and did not examine his knees or ankles. (Doc. 12, pp. 58-60). Plaintiff also testified that Dr. Feinerman asked him to walk without his cane, but he was unable to do so without leaning on the walls and furniture. (Doc. 12, pp. 59-60).[4]

Dr. Schill, the VE, also testified. During his testimony, Dr. Schill considered a hypothetical involving "a younger individual," with 12 years of schooling and no relevant work experience. (Doc. 12, p. 70). The individual in the hypothetical was described as having the ability to (1) lift and carry up to 20 pounds occasionally and 10 pounds frequently; (2) stand and walk up to 2 hours in an 8-hour workday; (3) sit up to 6 hours in an 8-hour workday; (4) push and pull with the left upper extremity; (5) occasionally climb ladders, ropes, and scaffolds; (6) occasionally stoop, kneel, crouch, and

---

[4] Plaintiff has also attached records that he obtained in response to a Freedom of Information Request ("FOIA"). The records include complaints regarding the quality of Dr. Feinerman's examinations, including allegations that he does not perform all the testing that is contained in his reports and that portions of his reports are fabricated. (Doc. 12-1). These records, however, were not presented to the ALJ as Plaintiff did not receive a response to his FOIA request until April 14, 2021.

crawl; and (6) occasionally reach overhead with the left upper extremity. (Doc. 12, pp. 70-71). The individual was also described as (1) needing to avoid concentrated exposure to vibration and loud noises; (2) being limited to jobs that can be learned in 30 days or less; (3) being limited to making simple work-related decisions; (4) having only a limited tolerance for working with the general public; and (5) having a limited tolerance for changes to the work processes and procedures. (Doc. 12, p. 71).

Dr. Schill testified that such an individual could perform unskilled sedentary jobs. (Doc. 12, p. 71). However, Dr. Schill also concluded that if that same individual would need to be absent from work three times per month on a regular basis, he would not be employable. (Doc. 12, p. 72). In addition, on examination by Plaintiff's counsel, Dr. Schill testified that the same individual may not be employable if he would need to alternate sitting and standing every 15 minutes. (Doc. 12, p. 73). He also stated that if such an individual needed to lay down for up to 1 hour during an 8-hour workday, he would not be employable. (Doc. 12, p. 73).

### 2. Relevant Medical Records

#### a. Veterans Administration Records

Records from the Veterans Administration provided a detailed history of Plaintiff's diagnosed conditions and associated symptoms. According to these records, Plaintiff had an examination in January 2019, the purpose of which was to assess the current severity of his thoracolumbar spine condition. (Doc. 12-1, p. 187). On the day of his examination, Plaintiff reported being unable to bend, lift, walk any distance, or be in one position for any length of time. (Doc. 12-1, p. 188). He further reported that the

stimulator "did help a little, but the doctors told him they have to find the right program." (Doc. 12-1, p. 188).

The examining physician also found that his range of motion was abnormal or outside the normal range. (Doc. 12-1, p. 188). Specifically, Plaintiff's extension was only 0-5 degrees. Forward flexion, right lateral flexion, left lateral flexion, right lateral rotation, and left lateral rotation were only 0-10 degrees. (Doc. 12-1, pp. 188-89). The physician noted that Plaintiff would have trouble driving and performing activities of daily living. (Doc. 12-1, p. 188).

The physician also noted the following: (1) pain noted during examination; (2) pain with weight bearing; (3) significant functional loss due to pain, weakness, and fatigability or incoordination; (4) disturbance of locomotion, interference with sitting, and interference with standing; (5) radicular pain; (6) regular use of a cane and occasional use of a walker; and (7) walking with a slow gait while using a cane. (Doc. 12-1, pp. 188-195). During the examination, Plaintiff was unable to perform a straight leg raise test. (Doc. 12-1, p. 189). Additional records from the Veterans Administration indicate that during another examination, Plaintiff was unable to perform a straight leg raise because he was unable to lift the leg more than 90 degrees due to back pain. (Doc. 12-1, pp. 239-40).

Additionally, the physician reported that a new MRI of Plaintiff's spine revealed the following:

> New disc cage as well as posterior metallic fusion extending from L5-S1. The hardware introduces some localized artifact at the operative levels. The central and right neural foramina remain patent. However, there is abnormal tissue-like signal and enhancement in the left neural forma and lateral recess within the laminectomy bed.

(Doc. 12-1, p. 195). The physician concluded that Plaintiff's spine condition would negatively impact his ability to work. (Doc. 12-1, p. 195):

> Veteran reports he is unable to lift, bend, twist, stand for any length of time and unable to walk any distance; unable to be in one position for any length of time; would have difficulty functioning in a sedentary environment with reported symptoms.

(Doc. 12-1, p. 195).

Plaintiff's ankle conditions were also examined. The examiner observed the following as to Plaintiff's right ankle: (1) dorsiflexion was 0-10 degrees and plantar flexion was 0-30 degrees; (2) objective evidence of localized tenderness or pain; and (3) objective evidence of crepitus. As to Plaintiff's left ankle, the physician observed the following: (1) dorsiflexion was 0-10 degrees and planter flexion was 0-30 degrees; (2) objective evidence of localized tenderness or pain on palpitation; and (3) objective evidence of crepitus. (Doc. 12-1, pp. 201-204). The physician further stated that he suspected both ankles were dislocated and concluded that the condition of Plaintiff's ankles would cause a disturbance of locomotion and interference with standing. (Doc. 12-1, p. 204-206).

The physician examined Plaintiff's knee and lower leg conditions. The physician concluded the right knee was abnormal or outside of normal range (flexion was 0-100 degrees and extension was 100-0 degrees). He also observed objective evidence of localized tenderness or pain on palpitation and objective evidence of crepitus. (Doc. 12-1, p. 216). The right knee was also found to be abnormal or outside the normal range (flexion was 0-95 degrees and extension was 95-0 degrees). The physician also found objective evidence of localized tenderness or pain on palpitation and objective evidence

of crepitus. (Doc. 12-1, p. 217). He also concluded that pain, weakness, fatiguability, and incoordination significantly limited functional ability with repeated use in both knees. (Doc. 12-1, pp. 218-219). Both knees also caused disturbance of locomotion. (Doc. 12-1, p. 221). Imaging documented arthritis in both knees. (Doc. 12-1, p. 227).

Additional examinations in the VA records show a limited range of motion of the cervical spine. (Doc. 12-1, p. 672).

Also relevant are Plaintiff's treatment records from an office visit in September 2020. During this visit, the examiner noted as follows:

> Pleasant 44 y/o gentleman, previously seen in 5/2019 by Dr. Caragine, with c/o low back pain with left leg radicular symptoms. He underwent a L5-S1 fusion with posterior lumbar interbody fusion from the left by Dr. Lu at DePaul Hospital but reported the radicular pain down the left buttock, thigh, and into the calf did not resolve following surgery. He reported that he has formed keloids anywhere he has had surgery. He has had numerous epidural steroids, the last of which caused him more pain, physical therapy, and spinal cord stimulator placement.
>
> Today, he states the SCS (spinal cord stimulator) has helped a little bit but he still has pain in the mid-low back radiating down the bilateral posterior legs to the feet bilaterally with associated numbness and tingling. He denies bowel or bladder incontinence. He states he is unable to walk 1 block without stopping due to pain. He states he is walking with a cane. He also reported neck pain radiating to the bilateral shoulders and down the left arm to the elbow and down to the thumb, index, and middle fingers, with associated numbness and tingling. He cannot have an MRI due to SCS (spinal cord stimulator).
>
> *****
> Impression:
> 1.    Mild degenerative disc disease in the cervical and thoracic spine.
> 2.    Spinal stimulator leads in the thoracic region.
> 3.    Postsurgical changes at L5-S1 as discussed above. Degenerative disc disease in the lumbar spine.

(Doc. 12-1, pp. 595-98).

Finally, as previously noted, on April 12, 2019, Plaintiff received a summary of benefits from the Department of Veterans Affairs ("VA'). (Doc. 12, p. 146). The summary of benefits indicates that the VA assessed Plaintiff as being 100% disabled. (Doc. 12, pp. 146-48) (stating that Plaintiff has a "100% total combined disability" and "100% final degree of disability").

### b.  Neurosurgeon James Lu

The medical records reveal that Plaintiff's last visit with his neurosurgeon, James Lu, was on October 22, 2019 (approximately 1.5 months following Plaintiff's spinal cord stimulator procedure). (Doc. 12-1, p. 135). Dr. Lu indicated that Plaintiff's stimulator was functioning appropriately and providing pain relief. However, Plaintiff also reported significant pain in his hips, buttocks, and legs which might have been caused by the cold weather. Upon examination, Dr. Lu noted that Plaintiff had normal strength and tone, and that his gait and station were stable with the use of a cane. Dr. Lu, however, also stated as follows:

> Despite his back surgery and stimulator placement, he continues to have significant pain and does not feel that he could return to work. At this point, he is at maximal medical improvement from the neurosurgical perspective, and [Dr. Lu has] no further surgical recommendations for him at this time.

(Doc. 12-1, p. 135). He also issued the following note:

> [Plaintiff] continues to have back and leg pain with only minimal relief following surgery. At this time he has met his maximum improvement from my standpoint. He will be unable to work his current job duties due to his chronic pain issues.

### 3.  State Agency Doctors Lanore Gonzalez and Bharati Jhaveri

Dr. Lenore Gonzalez, M.D. and Dr. Bhaarati Jhaveri, M.D. reviewed the record but

did not examine Plaintiff. Both physicians opined that Plaintiff could stand or walk for two hours in an 8-hour workday and limited Plaintiff to less than the full range of sedentary work. Both physicians concluded that Plaintiff was not disabled. (Doc. 12, pp. 78-103).

The ALJ found both physicians assessments to be partially persuasive. (Doc. 12, p. 26).

### 4. Consultative Examiner, Adrian Feinerman, M.D.

Dr. Feinerman examined Plaintiff on July 30, 2019. (Doc. 12, pp. 921-931). The examination lasted a total of 28 minutes. (Doc. 12, p. 928).

Dr. Feinerman opined that Plaintiff's need/use of a cane was mild ("he has a cane but was able to ambulate 50 feet without an assistive device."). (Doc. 12, pp. 926-27). He also found that Plaintiff had only mild difficulties tandem walking, standing on his toes and heels, and getting on and off the examination table, and moderate difficulties squatting and rising. (Doc. 12, p. 927). The results of Dr. Feinerman's other objective testing was essentially normal, including negative straight leg raising in both the seated and supine positions, normal hip and cervical range of motion, and a finding of no limitations on fine and gross manipulation. (Doc. 12, pp. 927-929).

## Analysis

Plaintiff argues that the RFC is not supported by substantial evidence because it (1) does not account for opinions and records provided by the Veterans Administration. (2) failed to consider Plaintiff's testimony about the consultative examination from Dr. Adrian Feinerman; and (3) incorrectly stated that Plaintiff can walk a block with a cane.

**A.      Veterans Administration Records**

The ALJ was provided with extensive medical records from the VA. This includes the VA's disability determination, finding that Plaintiff is 100% disabled. As to the VA's disability determination, the ALJ stated as follows:

> The undersigned has considered the claimant's Veterans Administration disability rating (8F/17). The rating is unpersuasive because the Veterans Administration's assessment is based on different criteria and which are not consistent with those used by the Social Security Administration.

(Doc. 12, p. 26).

An ALJ must consider disability determinations by other governmental agencies. *20 C.F.R. § 416.912(b)(5)*. But these determinations do not bind the SSA. 20 C.F.R. § 416.904; *Clifford v. Apfel,* 227 F.3d 863, 874 (7th Cir. 2000). The Seventh Circuit has rejected the Ninth Circuit's approach to give disability determinations by the VA "great weight," but it still says the VA's disability determination is entitled to "some weight." *Allord v. Barnhart,* 455 F.3d 818, 820 (7th Cir. 2000). This is because the VA and the SSA employ different standards when assessing disability. *Id.* (comparing *Ortiz v. Principi,* 274 F.3d 1361, 1364 (Fed. Cir. 2001), with *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996) ). The Seventh Circuit, however, has emphasized that "the differences are small." *Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015).

In *Hall v. Colvin,* 778 F.3d 688 (7th Cir. 2015), for example, the ALJ gave "some" weight to a VA determination that the claimant was 70% disabled, noting that the two agencies use different criteria for determining disability. *Id.* at 691. The Seventh

Circuit, however, said that "the differences [in the criteria] are small" and that the VA had found the claimant "totally unemployable by reason of his disability," which equated to a finding of total disability under the Social Security regulations. *Id.* The court explained that if "your medical condition precludes substantial gainful employment, you're totally disabled ... [under the Social Security Act]." *Id.* The court held that the ALJ failed to properly weigh the VA disability determination and ordered a remand to the Social Security Administration. *Id.*

In the instant case, the ALJ found that, because the VA employs different standards, the VA's disability determination was "unpersuasive." Although not entirely clear, this suggests that the ALJ gave no weight to the VA's disability determination due to the agencies' different standards. This is problematic. The Seventh Circuit has held that, despite the differences between the applicable standards (which the Seventh Circuit describes as being small), a VA determination as to disability is entitled to some weight. The ALJ did not do this. Further, at times, the ALJ seems to cherry pick from the medical records that are the bases for the VA's disability determination to emphasize findings that detract from the disability rating while ignoring findings that support it. Considering this, the Court finds that remand is warranted for further evaluation of the VA disability determination and for further evaluation of the bases for that determination.

**B.    Dr. Adrian Feinerman**

### 1. Failure to address Plaintiff's allegations as to Dr. Feinerman

Plaintiff testified that Dr. Adrian Feinerman, the physician that performed the consultative examination arranged by the Social Security Administration, failed to

perform material portions of the testing described in his report. Specifically, Plaintiff alleged that Dr. Feinerman did not (1) have him lie down on an examination table during the exam; (2) have him raise his legs while laying or sitting on the examination table; (3) examine the range of motion in his neck; or (4) examine his knees or ankles. He also testified that Dr. Feinerman instructed him to walk without a cane, but he was unable to do so without leaning on the walls and furniture.

Plaintiff has also attached documents he received in response to a FOIA request regarding Dr. Feinerman's work with the Social Security Administration (totaling 114 pages). The attached materials include complaints and correspondence regarding allegations that examinations performed by Dr. Feinerman are improperly administered, Dr. Feinerman does not perform all the testing that is contained in his reports, and that portions of Dr. Feinerman's reports are fabricated. (Doc. 12-1). For instance, in May 2017, an email was exchanged between officials at the Department of Social Security noting that a claimant surreptitiously recorded his or her examination with Dr. Feinerman, and that the video allegedly showed "the results of Dr. Feinerman's examination contained physical examination findings for testing that was never performed on the claimant." (Doc. 16-1, p. 5). The email was exchanged after the claimant's representative contacted the social security administration offering to provide them with a copy of the recording. (Doc. 16-1, p. 5).

In the instant case, Dr. Feinerman's report contains physical examination findings that Plaintiff claims never occurred. Additionally, Dr. Feinerman reported that Plaintiff was able to walk 50 feet without an assistive device, but he did not indicate that Plaintiff

had to lean on the walls or furniture.

In assessing Plaintiff's credibility as to the severity of his symptoms, the ALJ considered the findings of Dr. Feinerman, who examined Plaintiff for a total of 28 minutes. (Doc. 12, pp. 25-26). The ALJ concluded Dr. Feinerman's findings "do not support the claimant's alleged limitations." (Doc. 12, p. 25). In reaching this conclusion, the ALJ reviewed the test results reported by Dr. Feinerman. He then noted that "[Plaintiff] testified that no such testing occurred." But the ALJ does not provide any explanation as to why he is rejecting Plaintiff's testimony on this issue. (Doc. 12, p. 25). This is error.

To the extent the ALJ believed Plaintiff's testimony on this issue was not credible, he was required to explain why. Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein. *See also Terry v. Astrue,* 580 F.3d 471, 477 (7th Cir. 2009) (ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record). *Golemhiewski v. Barnhart,* 322 F.3d 912, 915 (7th Cir. 2003) (ALJ erred by insufficiently explaining why he discredited testimony of disability claimant); *Smith v. Astrue*, 467 F. App'x 507, 510 (7th Cir. 2012) (An ALJ must explain his or her reasoning to build the "logical bridge" connecting the evidence to the ALJ's decision).

The failure to address Plaintiff's allegations as to Dr. Feinerman was not harmless. Dr. Feinerman's findings played a significant role in the ALJ's decision, and Plaintiff's allegations suggest that those findings were inaccurate or even fabricated. On remand, the ALJ is free to reject Plaintiff's claims as to Dr. Feinerman, but he must provide reasons for doing so.

### 2.    New Evidence – Plaintiff's FOIA Request

As a final matter, the Court addresses the FOIA documents Plaintiff attached to his briefing. (Doc. 16-1). Plaintiff's counsel submitted the FOIA request on December 10, 2020, the same day as Plaintiff's hearing. Plaintiff's counsel did not receive a response until April 14, 2021 (approximately 3 months after the ALJ issued his decision). Accordingly, these documents are not part of the administrative record.

The Court cannot consider evidence that wasn't before the ALJ when reviewing a disability determination. *Eads v. Sec'y of the Dep't of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir. 1993). However, the Court can order a remand under sentence six of 42 U.S.C. § 405(g) if Plaintiff demonstrates that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Evidence is "material" if there is a "reasonable probability" that the Commissioner "would have reached a different conclusion had the evidence been considered," and evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997).

Here, although Plaintiff requested the documents during the pendency of his

proceeding, he did not receive a response until after the ALJ issued his decision. As such, the Court finds that the subject documents were not available to Plaintiff at the time of the proceeding and that there was good cause[5] for failing to incorporate the evidence into the record. The Court also finds that the documents constitute material evidence. As previously discussed, the ALJ found that claimant's statements regarding the severity of his symptoms were not entirely credible, in part, because they were inconsistent with Dr. Feinerman's findings. The record also suggests that Dr. Feinerman's findings contributed to the ALJ concluding that assessments from Plaintiff's treating physicians were "unpersuasive." Considering this, it is reasonable to conclude that new evidence pertaining to the quality and accuracy of Dr. Feinerman's examinations will impact the ALJ's decision.

In sum, the Court finds that the evidence as to Dr. Feinerman (Doc. 16-1) is both new and material. Accordingly, remand is warranted so that the ALJ can consider this evidence and reevaluate the disability determination, if necessary.

**C.      The RFC and Plaintiff's Ability to Walk or Stand**

The ALJ stated that Plaintiff reported he "could walk a block with a cane before needing to stop." Plaintiff argues, and the Commissioner admits, that this was in error. The record cited by the ALJ actually states the opposite:

The SCS (spinal cord stimulator) has helped a little bit but he still has pain

---

[5] Sentence six's good-cause requirement is designed to prevent "sandbagging" by a claimant who might seek out new treatments or opinions to shore up his case after an adverse decision. *Sears v. Bowen*, 840 F.2d 394, 400 (7th Cir. 1988). Plaintiff submitted his FOIA request on the day of his hearing, but he did not receive a response until after the ALJ issued the adverse decision. Neither the timing of his request, nor any other material in the record suggests an attempt on Plaintiff's part to manipulate the proceedings before the agency.

in the mid-low back radiating down the bilateral posterior legs to the feet bilaterally with associated numbness and tingling. He denies bowel or bladder incontinence. **He states he is unable to walk 1 block without stopping due to pain**. He states he is walking with a cane. He also reported neck pain radiating to the bilateral shoulders and down the left arm to the elbow and down to the thumb, index, and middle fingers, with associated numbness and tingling. He cannot have an MRI due to SCS (spinal cord stimulator).

(Doc. 12-1, p. 596) (emphasis added). The Commissioner contends, however, that the error is harmless because substantial evidence supports the ALJ's finding that Plaintiff could perform light work if limited to walking or standing two hours in an eight-hour workday, and if permitted to use a cane for any walking. (Doc. 21, p. 4). This argument is problematic for two reasons.

First, the RFC concludes that Plaintiff is capable of performing light work with certain restrictions. Social Security Ruling 83-10 defines the exertional requirements necessary to meet the definition of light work in 20 C.F.R. § 404.1567(b); it states that "a job is in this category when it requires a good deal of walking or standing," and that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. As noted above, the Commissioner argues that the ALJ reasonably found Plaintiff could walk up to two hours in a workday if permitted to use a cane for any walking. That finding qualifies Plaintiff to do sedentary work as defined in SSR 83-10, but it is well below the aforementioned exertional requirements for light work. *See* SSR 83-10 (in sedentary work "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday and sitting should generally total approximately 6 hours of an 8-hour

workday"). Moreover, the RFC, which included several restrictions, <u>did not place any</u> <u>limitations on the amount of time Plaintiff could spend walking or standing</u>.

The Commissioner acknowledges this additional mistake ("the ALJ neglected to state in the RFC heading of his decision that he was limiting Plaintiff to two hours of standing or walking in a day") (Doc. 21, p. 4) but insists that this too was harmless error. The Commissioner notes that the walking and/or standing limitations the ALJ meant to include in Plaintiff's RFC were included by the ALJ in his hypothetical to the VE, and the jobs identified by the VE took the limitation into consideration. While the Court is willing to accept that the inclusion of the walking and/or standing limitation in the ALJ's hypothetical to the VE may have rendered his failure to include this limitation in the RFC harmless, the Court is not convinced that the ALJ's conclusion that Plaintiff could stand and/or walk for two hours in an eight-hour workday is supported by substantial evidence, which leads to the second problem with the Commissioner's argument.

As noted above, the ALJ erroneously stated that Plaintiff admitted he could walk for a block without needing to stop. The Commissioner contends that this mistake was harmless because elsewhere Plaintiff reported being able to walk 200 feet continuously and because he testified that he could walk for 10 to 15 minutes without stopping. But the Commissioner's summary of Plaintiff's related statements is not entirely accurate. Plaintiff actually stated, "I can only walk 200 feet or less before my back and legs go out." (Doc. 12, 191). As to Plaintiff's ability to walk for 10 or 15 minutes, Plaintiff testified that, *on a good day*, he can walk or stand for 10-15 minutes, "at the most." (Doc. 12, p. 54). He further testified that *on a bad day* he "can't do anything." (Doc. 12, p. 54). Further, the fact

that Plaintiff can walk for 15 minutes on a good day, does not substantiate a finding that he can walk for an additional 105 minutes on a daily basis in a competitive work environment.

The Commissioner also argues that his gait has been described as "stable with the use of a cane," (Doc. 21, p. 4), and that during Dr. Feinerman's examination, Plaintiff only experienced mild difficulties walking and standing. (Doc. 21, p. 4). The Court, however, notes that his gait was actually described as "antalgic and stiff, but otherwise stable with use a cane." (Doc. 12, p. 822). Further, the ability to walk in the context of a brief examination is not the same as walking for a long distance, or for hours on end. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("Scott successfully walked 50 feet without a cane within the confines of her office, but that brief excursion hardly demonstrates an ability to stand for 6 hours (and neither does Scott's testimony that she could walk 2 blocks)."); *see also Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The ALJ overstated findings from three diagnostic tests to discredit Gerstner's complaints ... [Gerstner never claimed] that her condition totally impaired the abilities tested in these exams. Instead, she said that her pain was triggered by prolonged sitting, standing, or activity and stress."); *Murphy v. Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014) ("Dr. Mayer noted that Murphy's gait and tandem gait had returned to normal, but that description is not informative as to whether Murphy could perform light work."). Additionally, until the ALJ fully considers Plaintiff's allegations regarding the quality of Dr. Feinerman's examination, findings from his consultative exam are not persuasive on this issue.

Finally, the Commissioner argues that the ALJ's finding as to Plaintiff's ability to

walk or stand for up to two hours in an eight-hour workday was based on Dr. Bharati Jhaveri's assessment. Dr. Jhaveri, a non-examining State agency consultant, opined that Plaintiff could walk or stand for two hours in an eight-hour workday. The ALJ, however, did not discuss this portion of Dr. Jhaveri's evaluation as a reason for concluding that Plaintiff has the ability to walk or stand for two hours in an eight-hour workday. In fact, the ALJ's decision does not mention this particular limitation at all. The limitation is only mentioned during the hearing in the hypothetical the ALJ presented to the VE.

As a result, the position taken by the Commissioner in responding to Plaintiff's claims is an ad hoc argument that violates the *Chenery* doctrine, *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, (1943), which prohibits agency lawyers from defending the agency's decision on grounds that the agency itself had not embraced. *See also* Parker v. Astrue, 597 F.3d 920, 922-23 (7th Cir. 2010) (emphasizing that it violates the *Chenery* doctrine for the Commissioner to defend the ALJ's decision on grounds that the ALJ has not embraced).

For these reasons, the Court finds that the ALJ's finding, to the extent there was such a finding, that Plaintiff is capable of standing and/or walking for two hours in an

24

eight-hour workday is not supported by substantial evidence.

### Conclusion

The final decision of the Commissioner of Social Security denying Plaintiff's application for social security benefits is **REVERSED and REMANDED** for further proceedings consistent with this opinion.

The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: September 28, 2022

_____
DAVID W. DUGAN
United States District Judge